UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JULIAN FRANCIS BATES,

    Plaintiff,

v.

AMERICAN AXLE AND
MANUFACTURING, INCORPORATED,

    Defendant.
_____/

Case No. 17-cv-11796

HON. MARK A. GOLDSMITH

**OPINION AND ORDER
(1) OVERRULING PLAINTIFF'S OBJECTIONS (DKT. 38), (2) ACCEPTING THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE DATED AUGUST 3, 2018 (DKT. 35), and (3) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. 25)**

Plaintiff Julian Francis Bates filed this employment discrimination action under 42 U.S.C. § 1981, against Defendant American Axle and Manufacturing, Incorporated ("AAM"). See Am. Compl. (Dkt. 16). The matter was referred to Magistrate Judge Stephanie Dawkins Davis for all pretrial proceedings. See Order of Referral (Dkt. 3). Defendant filed a motion for summary judgment (Dkt. 25). On August 3, 2018, the magistrate judge issued a Report and Recommendation ("R&R") (Dkt. 35) recommending granting Defendant's motion for summary judgment. Bates filed timely objections (Dkt. 38), and AAM filed responses to the objections (Dkt. 39). For the reasons that follow, the Court adopts the magistrate judge's R&R and dismisses this case with prejudice.

**I.     BACKGROUND**

The factual and procedural background has been adequately set forth by the magistrate judge and need not be repeated here in full. In brief summary, Bates filed this wrongful termination

1

action against his former employer, AAM. Am. Compl. ¶ 1. In the amended complaint, Bates, who is African-American, asserts a race discrimination claim under Title VII (Count I), a race discrimination claim under 42 U.S.C. § 1981 (Count II), a race discrimination claim under the Michigan Elliot-Larsen Civil Rights Act ("ELCRA") (Count III), a retaliation claim under ELCRA (Count IV), and a retaliation claim under § 1981 (Count V). See Am. Compl. ¶¶ 36-74.

James Borowiak, Senior Manager at AAM, hired Bates sometime in February 2015. Borowiak Decl., Ex. C to Def. Mot. for Summ. J., ¶ 3, PageID.430 (Dkt. 25-4); Bates Dep., Ex. A to Def. Mot. for Summ. J., at 118, PageID.262 (Dkt. 25-2). On March 20, 2015, Bates began his AAM employment as a validation engineer for power transfer units ("PTUs") – an entry level engineering position. Id. at 57-58, PageID.262; Borowiak Decl. ¶ 4, PageID.431. Bates was responsible for running tests on PTUs, breaking down parts, and writing reports for AAM and its customers with respect to how the parts performed. Id. A validation engineer can be promoted to a product engineer and eventually a systems engineer. Pl. Resp. to Mot. for Summ. J. at 20, PageID.804. According to AAM, Bates exhibited poor job performance from the outset of his employment. Borowiak Decl. ¶ 6, PageID.431-432. Bates does not dispute this fact, but says that he was unable to complete his work because his workload was significant and Borowiak impeded his work with poor management. Bates Decl., Ex. 1 to Obj. ¶ 15, PageID.1204-1205.

Among other efforts, AAM maintains that Borowiak attempted to coach Bates to help improve his performance. Borowiak Decl. ¶ 7, PageID.432. When such efforts failed, Bates began meeting with Christina Lizana, AAM's Human Resources Manager, along with Borowiak, to address his work performance issues sometime in November 2015. Bates Dep. at 125:11-21, PageID.264. An informal Performance Improvement Action Plan ("PIAP") was created with a list of open items that Bates needed to complete within a given time frame. Borowiak Decl. ¶ 9,

PageID.480.  However, according to AAM, because Bates continued to underperform in his position, he was officially placed on an eight-week PIAP in February 2016.  Borowiak Decl. ¶ 13, PageID.481; PIAP, Ex. L to Mot. for Summ. J., PageID.481-486 (Dkt. 25-13).

On February 23, 2016, the day after Bates was informed of the official PIAP, he complained to human resources representative Elise Smith about Borowiak.  2/23/2016 E-mail Chain, Ex. N to Def. Mot. for Summ. J., at PageID.493-498 (Dkt. 25-15).  Among other things, Bates complained that on January 27, 2016, during a conference call, Borowiak said "we need to have a lynch party" in reference to an unnamed employee.  2/23/2016 Email at 6, PageID.498.  However, Bates says that he was multi-tasking during the call when Borowiak allegedly made the comment and could not provide any additional facts or context to the alleged comment.  Bates Dep. at 79:6-10, PageID.252.

A few days later, Bates complained to Smith again that a co-worker had also used the word "lynch" ten months earlier.  Id. at 84-87, PageID.253-254.  Bates alleged that on April 8, 2015, right after he was hired, Sal Grupido sent out a calendar invite for a "Lynch mtg."  Id. at 84, PageID.254.  At that time, AAM used "Microsoft Lync" software for its phone conference system and employees referred to conference calls as "Lync meetings."  Bates Dep. at 85, PageID.254, Borowiak Decl. ¶ 17, PageID.482.  Bates wrote to Smith that he had assumed initially that the spelling in the invite was a typo.  2/23/2016 E-mail Chain at 1, PageID.493.  This mistake was apparently not uncommon.  Bates also sent an e-mail to an AAM coworker that made the same spelling error, writing to his co-worker that he was on a "Lynch meeting."  Bates Dep. at 90-91, PageID.255; 4/27/2016 Bates Email, Ex. O to Def. Mot. for Summ. J., at PageID.500 (Dkt. 26-16).

According to AAM, after the eight-week PIAP period ended, Borowiak made the decision to terminate Bates' employment because Bates, among other things, missed customer meetings, lacked preparedness and material for presentations, and missed set deadlines for the completion of tests and reports, which caused management to constantly intervene. Borowiak Decl. ¶¶ 15-16, PageID.481-482. Bates was terminated on May 5, 2016. Id. ¶ 16, PageID.482. In June 2016, Borowiak hired John Nelson-Johnson as Bates' replacement, who, like Bates, is African-American. Id. ¶ 18, PageID.482.

## II. STANDARD OF DECISION

The Court reviews de novo any portion of the R&R to which a specific objection has been made. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Alspaugh v. McConnell, 643 F.3d 162, 166 (6th Cir. 2011) ("Only those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have."). Any issues raised for the first time in objections to an R&R are deemed waived. Uduko v. Cozzens, 975 F. Supp. 2d 750, 757 (E.D. Mich. 2013) (citing Murr v. United States, 200 F.3d 895, 902 n.1 (6th Cir. 2000) ("[I]ssues raised for the first time in objections to magistrate judge's report and recommendation are deemed waived.").

## III. ANALYSIS

The magistrate judge found that Bates failed to establish a prima facie case of racial discrimination, because he cannot show that he was replaced by a person in a non-protected class, or that he was treated differently from any similarly situated employees outside of his protected class. R&R at 17, PageID.1142. Additionally, the magistrate judge found that Bates did not provide proper comparators from which a jury could find that he was treated differently than other

4

employees who were similarly situated. R&R at 24, PageID.1149. With respect to the retaliation claim, the magistrate judge found that Bates failed to show that Borowiak knew that Bates had complained internally to AAM's Human Resources Department, which forms the basis of Bates' retaliation claim. R&R at 29, PageID.1154.

As an initial matter, Bates' objections include attachments containing his own declaration, a Verizon Wireless phone bill, his cell phone calendar, and an internet article titled "4 Practical Steps for Employers to Defend Against Wrongful Termination Lawsuits" that are all offered as direct evidence of discrimination. Exs. 1-4 to Pl. Obj., PageID.1194-1227. This is problematic for two reasons.

First, although a district judge may exercise discretion to consider new evidence presented for the first time with objections to a magistrate judge's R&R, Fed. R. Civ. P. 72(b)(3), the practice is generally disfavored, see Sain v. Caruso, No. 1:11–cv–63, 2012 WL 956179, at *2 (W.D. Mich. Feb. 28, 2012) ("'[L]itigants cannot be permitted to use litigation before a magistrate judge as something akin to [a] spring training exhibition game, holding back evidence for use once the regular season begins before the district judge.'") (quoting Dyer v. Montgomery County Jail, No. 3:10–cv–0129, 2011 WL 1322896, at *4 (M.D. Tenn. Apr. 6, 2011)); see also GWG MCA Capital, Inc. v. Nulook Capital, LLC, 17-cv-1724, 2018 WL 1830814, at *1 (E.D.N.Y. Feb. 26, 2018) ("This 'would reduce the magistrate's work to something akin to a 'meaningless dress rehearsal.'") (quoting Vega v. Artuz, No. 97-cv-3775, 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002) (internal citations omitted)). Nonetheless, even if the Court takes Bates' new evidence into consideration, with the exception of paragraphs 11, 20, and 21 of Bates' declaration, the evidence does not cure his failure to show that he was replaced by someone outside the protected class or that he was treated differently than a similarly situated, non-protected employee. Paragraphs 11,

5

20, and 21 relate to Paul Osberg, a validation engineer at AAM, who Bates asserts is an appropriate comparator. Osberg will be discussed further in Bates' specific objections.

Second, Bates misunderstands the difference between direct and circumstantial evidence. "Direct evidence of discrimination is that evidence which, if believed, <u>requires</u> the conclusion that unlawful discrimination was the motivating factor in the employer's actions. It does not require the fact finder to draw any inferences to reach that conclusion." <u>Sharp v. Aker Plant Servs. Grp., Inc.</u>, 726 F.3d 789, 798 (6th Cir. 2013) (emphasis added) (quoting <u>Wexler v. White's Fine Furniture, Inc.</u>, 317 F.3d 564, 570 (6th Cir. 2003) (en banc), and <u>Amini v. Oberlin Coll.</u>, 440 F.3d 350, 359 (6th Cir. 2006)) (quotation marks omitted). "Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable <u>inference</u> that discrimination occurred." <u>Wexler,</u> 317 F.3d at 570 (emphasis added) (citing <u>Kline v. Tennessee Valley Auth.</u>, 128 F.3d 337, 348 (6th Cir. 1997)).

None of Bates' new evidence is direct evidence of discrimination. Bates argues that cell phone records, Outlook Calendar entries, and his declaration show that Borowiak "set him up to be late for [a] meeting" with the human resources director. Obj. 4-5, PageID.1167-1168. However, such evidence does not <u>require</u> the conclusion of unlawful discrimination. At best, it can be considered evidence from which a jury could <u>infer</u> racial animus, and is therefore circumstantial evidence.

To test the sufficiency of circumstantial evidence, courts employ the <u>McDonnell-Douglas</u> burden shifting framework, as the magistrate judge did in this case. <u>Tilley v. Kalamazoo Cty. Rd. Comm'n</u>, 777 F.3d 303, 308 (6th Cir. 2015) (citing <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). Under the three-step <u>McDonnell-Douglas</u> framework, the first step requires the plaintiff to establish a prima facie case of discrimination. <u>McDonnell Douglas</u>, 411 U.S. at 802.

6

If the plaintiff meets his or her burden, the second step shifts the burden to the employer to articulate legitimate, nondiscriminatory reasons for the adverse employment action. Id. And, if the employer meets its burden, the burden shifts back to the plaintiff at the third step to show that the employer's legitimate, nondiscriminatory reasons were pretext for discrimination. Id. at 804.

As noted above, the magistrate judge found that Bates failed to establish a prima facie case of discrimination. "To establish a prima facie case of intentional discrimination, a plaintiff must show that (1) he was a member of a protected class, (2) he suffered an adverse employment action, (3) he was otherwise qualified for the position, and (4) he was replaced by someone outside the protected class or treated differently than a similarly situated, non-protected employee." Deleon v. Kalamazoo Cty. Rd. Comm'n, 739 F.3d 914, 918 (6th Cir. 2014) (citing Wright v. Murray Guard, Inc., 455 F.3d 702, 707 (6th Cir. 2006)). The magistrate judge found that Bates' claims of discrimination failed at the fourth element of the prima facie case, because it is undisputed that Bates was replaced by someone within his protected class, R&R at 17, PageID.1142, and that he was unable to provide any similarly-situated employees from outside of his protected class who were treated differently than he was at AAM, id. at 19-24, PageID.1144-1149.

With the above in mind, the Court turns to Bates' objections. Bates lists nine objections to the magistrate judge's R&R. However, some of the objections raise issues not presented to the magistrate judge. Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived. Ward v. United States, 208 F.3d 216, *1 (6th Cir. 2000) (table decision) (citing Marshall v. Chater, 75 F.3d 1421, 1426-27 (10th Cir. 1996)); Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co., 840 F.2d 985, 990-991 (1st Cir. 1988) (holding that "an unsuccessful party is not entitled as of right to de novo review . . . of an argument never seasonably raised before the magistrate"); Greenhow v. Secretary of Health & Human

7

Servs., 863 F.2d 633, 638-639 (9th Cir. 1988) ("[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act."), overruled on other grounds by United States v. Hardesty, 977 F.2d 1347, 1348 (9th Cir. 1992) (en banc). Bates' specific objections in most instances lack clarity. The Court will nonetheless sift through the objections and address the issues that are apparent and not waived. Based on the Court's review, none of Bates' objections has merit.

### A. Objections One through Six

In his first six objections, Bates conflates the prima facie case analysis with the pretext analysis under the McDonnell-Douglas burden-shifting structure. See Obj. at 2-20, PageID.1168-1173. Bates presents most of his objections as addressing pretext, but weaves arguments with respect to similarly-situated employees directed at establishing the fourth element of the prima facie case. As noted above, the magistrate judge concluded that Bates failed to establish a prima facie case of racial discrimination, in part, because he did not establish that he was treated differently from any similarly situated employees outside of his protected class. R&R at 17, PageID.1142. If Bates does not establish a prima facie case of discrimination, the burden does not shift to AAM to articulate a legitimate, nondiscriminatory reason for his termination, and, of course, the burden never shifts back to Bates to establish pretext. See McDonnell Douglas, 411 U.S. at 802-804. Because the prima facie case analysis is dispositive in this matter, the Court turns to Bates' arguments that he was treated differently than similarly situated employees. The Court finds the arguments lacking.

Bates argues that Lia Benaglio, Charles Wojdyla, Samer Metry – and for the first time, Paul Osberg – all engineers at AAM, are similarlysituated employees who were treated better than

8

he was at AAM. Plaintiffs are required to "demonstrate that he or she is similarly-situated to the non-protected employee in all <u>relevant</u> respects." <u>Ercegovich v. Goodyear Tire & Rubber Co.</u>, 154 F.3d 344, 353 (6th Cir. 1998) (emphasis in original). Relevant considerations may include having the same supervisor, <u>McMillan v. Castro</u>, 405 F.3d 405, 414 (6th Cir. 2005), being subject to the same standards, <u>Ercegovich</u>, 154 F.3d at 352, and suffering different consequences for the same actions, <u>Clayton v. Meijer, Inc.</u>, 281 F.3d 605, 611 (6th Cir. 2002). "Whether th[e] criterion is relevant depends upon the facts and circumstances of each individual case." <u>McMillan</u>, 405 F.3d at 414.

One of Bates' primary contentions in this case is that he was subjected to an excessive workload, unlike other employees at AAM. <u>See generally</u> Obj. 2-20, PageID.1168-1173. However, the magistrate judge found that other than Bates' statement that he had a greater workload than Benaglio, Wojdyla, and Metry, the record does not support such a showing. R&R at 23, PageID.1148. The magistrate judge noted that Benaglio, Wojdyla, and Metry were product or design engineers who had different job duties than Bates, an entry-level validation engineer. R&R at 21, PageID.1146. Of course, there is no requirement that a plaintiff and a comparator be from the same department or have the same position, so long as they are similarly situated in all relevant respects. <u>Seay v. Tennessee Valley Auth.</u>, 339 F.3d 454, 480 (6th Cir. 2003). In <u>Seay</u>, for example, the Sixth Circuit concluded that even though the plaintiff and another employee worked in different departments and under different supervisors, they were appropriate comparators because they both had taken work vehicles for personal use, a violation of company policy, for which they were disciplined. <u>Id.</u> at 479-480. Therefore, they were similar in all relevant respects (disciplined for the same misconduct), and an appropriate comparison of consequences of the plaintiff's and other employee's actions could be made. <u>Id.</u> at 480.

9

Here, however, Benaglio, Wojdyla, and Metry worked on different projects in different departments. The respective workloads of engineers in different departments, and further up AAM's engineer hierarchy, do not provide a relevant comparison from which a jury can infer that Bates was treated differently with respect to workload. For example, a validation engineer works with the product development team, whereas as systems engineer would not necessarily be involved. Borowiak Dep. at 36:17-37:21, PageID.407. Engineers in different departments working on different products are not appropriate comparators in this instance.

Bates also argues that Bengalio had fewer programs to manage than Bates, when she <u>was</u> a validation engineer. Bengalio was the validation engineer who immediately preceded Bates. Bengalio Decl., Ex. F to Def. Mot. for Summ. J., ¶ 5, PageID.468 (Dkt. 25-7). Bates argues that when he began, he had either two or three programs that he was responsible for. Obj. at 11, PageID.1174. By the end of his employment, however, he had five programs to manage. <u>Id.</u> Therefore, he reasons that he had a greater workload than Bengalio. <u>Id.</u> But Bates' reasoning is flawed. All that Bates shows is that during the transition from Bengalio to Bates, there was less work than at the time Bates was terminated. It cannot be inferred from that overlap in time that Bates had a greater workload than Bengalio at any other time. According to Bengalio, the workload fluctuates over time, but it on average balances out. <u>Id.</u> This is consistent with Bates' testimony that work demands tended to change over time. <u>See</u> Bates Dep. at 59:2-11, PageID.247. According to Bengalio, Bates did not have any more work than she did when she was a validation engineer. <u>Id.</u> ¶ 4, PageID.467. Other than providing flawed reasoning, Bates does not contest Bengalio's testimony in this regard.

Furthermore, there is no dispute that Bates was having workload difficulties from the beginning of his employment – even when he had only two or three programs to manage. By

10

contrast, a reasonable inference here is that Bengalio did not have such problems, at least with two or three programs, because she was promoted from the validation engineer position to a product engineer. Whether Bengalio would have had difficulty managing five programs is not clear from the record, so it is not possible to make a fair comparison to Bates in that regard. Bengalio is not a comparator in all relevant respects.

With respect to discipline, Bates offers no evidence that Benaglio, Wojdyla, and Metry engaged in similar conduct – e.g., being unprepared, poor planning, not completing work – for which they were treated more favorably than Bates. Accordingly, the magistrate judge correctly found that Benaglio, Wojdyla, and Metry were also not suitable comparators in this respect. R&R at 22-23, PageID.1147-1148.

For the first time, Bates offers Paul Osberg as a comparator, with respect to discipline. Obj. at 13, PageID.1176. According to Bates, Osberg was similarly situated to him because they were both validation engineers, and Osberg was outside of Bates' protected class. Id. (citing Bates Decl. ¶¶ 11, 20-21). In his deposition, Bates said that Osberg was a validation engineer who worked on different products and programs than he did. Bates Dep. Tr. 221:1-7, PageID.288. Nonetheless, Bates says that Osberg, like himself, was occasionally late for meetings. Id. at 221:11-13, PageID.288. He further asserts that Osberg was once unprepared for a meeting, which frustrated Borowiak. Id. at 224:2-6, PageID.288. Therefore, at first blush, Osberg appears to be a suitable comparator by which a jury can consider whether Bates and Osberg were treated differently for the same misconduct. Upon scrutiny, however, the comparison fails to support Bates' discrimination claims.

The comparison between Bates and Osberg fails to show that they were treated differently. Bates offers only one concrete example of Osberg engaging in similar conduct to Bates

(unprepared for a meeting) and he notes that Borowiak was noticeably frustrated with Osberg. Indeed, Bates and Osberg both complained to each other after the meeting about how Borowiak treated them. Id. at 227:2-22, PageID.289. If anything, this incident cuts against Bates' argument that Bates was treated differently than Osberg. Additionally, outside of a meeting where Osberg was unprepared, Bates testified that he did not have any other personal knowledge regarding Osberg's performance issues, and more importantly, how such issues were resolved. Id. at 226:2-7, PageID.289. Therefore, even if Osberg is similarly situated in some relevant respects to Bates, there has been no showing that Bates was treated differently on work performance issues.

Nonetheless, Bates also asserts that he had five programs to manage, which was more than the number of programs Osberg had to manage. Bates Decl. ¶ 20. However, Bates also says that Osberg "handled PTU's, as [Bates] did, but not always. [Bates] handled Rear drive modules, as Osberg did, but not always." Id. Bates does not explain how Osberg's workload was less than Bates' workload, or any details about Osberg's work. This is especially problematic for comparison purposes in light of Bates' admission that he and Osberg's relevant work was not necessarily the same. Osberg cannot be used as a comparator with respect to workload, because there is not enough information in the record to establish a relevant comparison.

Finally, Bates argues that all employees working under Borowiak are similarly situated with respect to being placed on PIAPs. Specifically, Bates argues that he was treated differently than others because no other employee was placed on back-to-back PIAPs. Obj. at 8-9, PageID.1171-1172. However, as noted above, Bates has not shown than anyone else at AAM had work performance issues and was treated more favorably than Bates. An appropriate comparator would be another employee who, among other things, consistently failed to complete work tasks, and yet was not put on a PIAP. Bates does not offer anyone who meets that criterion. It was not

12

until Bates filed his objections to the R&R that he identified Osberg as a potential comparator. But as already explained, there is no record evidence that Osberg had the persistent work problems that Bates had or whether he was ever placed on a PIAP. Accordingly, because Bates has not provided a suitable comparator who is similarly situated in all relevant respects and was treated differently than Bates, objections one through six are overruled.

   **B. Objection Seven**

In his seventh objection, Bates argues that the magistrate judge erred by not finding that Elise Smith, a human resources employee, was a decision-maker for the purposes of his retaliation claim. Obj. at 21, PageID.1184. Bates argues that Nakia Campbell, a former human resources employee, had some ability to influence employment decisions. Id. By analogy, Bates reasons that Smith had some influence in employment termination decisions. Id. Bates concludes that Smith, therefore, was "very involved in [his] termination decision or at least a relevant decision maker." Id. Bates reasons that (1) because Smith told him not to confront Borowiak about the "Lynch party" comment, (2) Smith failed to investigate his discrimination claims properly by failing to follow AAM policy, and (3) Nakia Campbell had something to do with his hiring, that this somehow shows that Smith was a relevant decision-maker. Id. at 22, PageID.1185. However, none of Bates' observations suggests Smith was involved in Bates' termination. Bates' purported evidence that Smith was a relevant decision-maker simply shows that she was involved in traditional human resources activities.

The magistrate judge also concluded that Smith was not a relevant decision-maker with regard to Bates' termination. R&R at 28, PageID.1153. The magistrate judge explained that merely supporting Borowiak's decision to terminate Bates did not equate to her participation in his termination. Id. The record demonstrated that Smith was acting as a human resources

13

professional, but not a decision-maker in the termination process. Id. at 28-29, PageID.1153-1154. Therefore, Bates cannot show that anyone other than Borowiak was a relevant decision-maker with respect to his termination. And Bates admits that Borowiak was not aware of his complaints to the human resources department regarding discrimination, which forms the basis of his retaliation claim. Am. Compl. ¶ 64. Accordingly, objection seven is overruled.

C. **Objection Eight**

In his eighth objection, Bates argues that the magistrate judge erred by failing to address his hostile-work-environment claim. Obj. at 23, PageID.1186. AAM argues that this is the first time Bates has raised this claim. Def. Resp. to Obj. at 13, PageID.1245. Although this is not the first time Bates has raised this matter,[1] the Court agrees with AAM that a hostile-work-environment claim has not been alleged in this case.

The amended complaint is organized in the traditional manner consisting of headings for the introduction, parties, jurisdiction and venue, general allegations, count headings, and a request for relief. Counts I and II alleges discrimination under Title VII and 42 U.S.C. § 1981, respectively, PageID.84-85; Count III alleges racial discrimination under the ELCRA, PageID.86; and Counts IV and V allege retaliation under the ELCRA and 42 U.S.C. § 1981, respectively. Under Count IV, the ELCRA retaliation claim, Bates alleges the following:

> As a result of American Axle and manufacturing's employees ignoring the C.E.O.'s stance on unlawful harassment and discrimination and due to the Plaintiff's human resources representative, Thompson, failure to investigate his, the Plaintiff's, discrimination claim, and due to the Plaintiff's higher workload than similarly situated Caucasian co-workers an <u>intimidating and hostile work environment was</u>

---

[1] Bates designated a heading in his response to AAM's motion for summary judgment related to a hostile-work-environment claim. Pl. Resp. to Mot. for Summ. J. at iii, PageID.783. In his response brief, Bates again notes a hostile work environment in his heading, id. at 21, PageID.805; however, he supports his claim with a list of statements almost entirely devoted to business fraud, id. at 23-24, PageID.807-808. The remainder of the statements related to AAM's failure to investigate his allegations of racial discrimination. Id. There is no discernable hostile-work-environment argument in Bates' response brief.

14

<u>created for the Plaintiff and for other protected employees</u>. This unlawful work environment has existed and probably still exists at American Axle and Manufacturing.

Am. Compl. ¶ 65, PageID.90 (emphasis added). However, a single reference to a hostile working environment under the ELCRA retaliation count, set out in conclusory form without specific supporting facts, does not amount to a hostile-work-environment claim under Title VII. Even taking the entire amended complaint into consideration, under the Sixth Circuit standard, it is clear that this matter was not properly raised in the pleadings.

"A hostile work environment claim requires proof that (1) plaintiff belongs to a protected class; (2) []he was subject to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) the defendant knew or should have known about the harassment and failed to take action." <u>Phillips v. UAW Int'l</u>, 854 F.3d 323, 327 (6th Cir. 2017). The elements are substantially the same for an ELCRA claim. <u>Id.</u> at n.3 (citing <u>Quinto v. Cross & Peters Co.</u>, 547 N.W.2d 314, 319–20 (Mich. 1996)). To be actionable, however, the relevant conduct must be "so severe or pervasive as to constitute a hostile or abusive working environment both to the reasonable person and the actual victim." <u>Randolph v. Ohio Dep't of Youth Servs.</u>, 453 F.3d 724, 733 (6th Cir. 2006). "In determining whether an actionable hostile work environment claim exists, we look to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 116 (2002) (internal citation omitted).

The Sixth Circuit has found "even offensive and bigoted conduct insufficient to constitute a hostile work environment if it is neither pervasive nor severe enough to satisfy the claim's

15

requirements." Phillips, 854 F.3d at 328 (citing Williams v. CSX Transp. Co., 643 F.3d 502, 513 (6th Cir. 2011) (finding no hostile work environment where defendant "call[ed] Jesse Jackson and Al Sharpton 'monkeys' and [said] that black people should 'go back to where [they] came from'" among other racist comments); Reed v. Procter & Gamble Mfg. Co., 556 F. App'x 421, 432 (6th Cir. 2014) (no hostile work environment where plaintiff was subjected to race-based comments and his supervisor stood behind him and made a noose out of a telephone cord); Clay v. United Parcel Serv., Inc., 501 F.3d 695, 707-708 (6th Cir. 2007) (fifteen racially-motivated comments and instances of disparate treatment over a two-year period were isolated, not pervasive, and therefore not actionable under Title VII)).

The evidence of emails using the word "lynch" and two isolated comments using the same word are a far cry from the Sixth Circuit's severe and pervasive standard. Additionally, there is no mention of a hostile-work-environment theory anywhere in Bates' deposition transcript. It is clear that Bates did not plausibly allege a hostile-work-environment claim in this case. Therefore, the magistrate judge was correct not to address a hostile-work-environment claim in her R&R. Accordingly, objection eight is overruled.

**D. Objection Nine**

In his ninth objection, Bates reasserts his argument that AAM replaced him with a person within his protected class as a litigation defense tactic to defend against his Equal Employment Opportunity Commission ("EEOC") complaint. Obj. at 25, PageID.1188. The magistrate judge found that Bates' "theory that AAM's hiring of his replacement was a calculation to enhance its defense before the EEOC is mere speculation untethered to any proof in the record or authority supporting its persuasive relevance." R&R at 18, PageID.1143. Indeed, in his objection, Bates admits that his speculation "might" fall outside of the McDonnell-Douglas burden-shifting

framework. Obj. at 25, PageID.1186. AAM argues that the magistrate judge properly discounted Bates' argument as mere speculation. Resp. to Obj. at 4, PageID.1235. The Court agrees.

To support a plaintiff's position on summary judgment, "there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Bates has not designated any facts in the record to support his theory that AAM intentionally hired a replacement validation engineer within Bates' protected class simply to defeat his race discrimination claims. Such speculation cannot establish the fourth element of the prima facie case for discrimination, because it is insufficient to create a genuine issue of material fact for a jury to resolve. Accordingly, objection nine is overruled.

## IV. CONCLUSION

For the foregoing reasons, the Court **OVERRULES** Bates' objections (Dkt. 38), accepts the recommendation contained in the magistrate judge's R&R (Dkt. 35), and **GRANTS** Defendant's motion for summary judgment. This case is **DISMISSED WITH PREJUDICE**.

SO ORDERED.

Dated: September 28, 2018             s/Mark A. Goldsmith  
   Detroit, Michigan                   MARK A. GOLDSMITH  
                                         United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 28, 2018.

                                                               s/Karri Sandusky  
                                                               Case Manager